WATTS, J.,
concurring, in which McDONALD, J., joins.
Respectfully, I concur. I would affirm the judgment of the Court of Special Appeals and hold that William T. Lovelace, Jr.’s (“Lovelace”), Respondent’s, tort claim for defamation with actual malice sought monetary damages that Amalgamated Transit Union, Local 1300 (“Local 1300”), Petitioner, could not provide[1] as Local 1300 lacked a sufficient internal remedy to process and adjudicate such a claim; therefore, Lovelace *579 was not required to exhaust internal union remedies. The Majority recognizes that the defamation claim is different from claims that are anticipated by Local 1300’s constitution, but does not expand upon the idea or append the distinction to its holding. See Maj. Op. at 575-76, 109 A.3d at 105. I would.
Lovelace’s claim could have arisen in any employment context, but simply happened to arise within the union election context. Nothing within Local 1300’s constitution provided for the handling and resolution of the type of claim brought by Lovelace—a tort claim for defamation. Section 22 of Local 1300’s constitution, entitled “Charges, Trials and Penalties,” sets forth the union’s “chargeable offense” procedure through which a union member can prefer charges against another union member or officer for various offenses, including “conduct unbecoming a member” and “financial malpractice.” If charges are preferred against a union member or officer, the charges may thereafter be referred to the Executive Board or a trial committee for investigation and trial. If charges are sustained against a union member or officer, that member or officer “may be subjected to discipline and penalty in accordance with the applicable provisions of” Local 1300’s constitution. Possible discipline includes suspension from office, suspension or expulsion from the union, fines, a declaration that the offender is ineligible to hold office, or “other[ ] discipline[.]” In addition, Section 14 of Local 1300’s constitution, concerning election of local union officers, provides a procedure for challenging the results of an election, stating: “Any member who is entitled to vote may challenge the conduct or results of an election by filing, within ten (10) days of the counting of the ballots, a challenge to the incumbent [Secretary-Treasurer] of his or her [Local Union] to such effect.”
In short, even if Lovelace had brought his defamation claim under Local 1300’s constitution, it is unclear whether Local 1300 would have been equipped to process and resolve the matter under either Section 22 or Section 14, let alone award monetary damages. The Majority is in accord but does not make this obvious distinction a part of its holding. See Maj. Op. at 575-76, 109 A.3d at 105. Specifically, the Majority *580 states that, “while there is a possibility that pursuing § 22.1 and § 14.8 of the Local 1300 Constitution might have mitigated some of Lovelace’s damages, any mitigation is uncertain and speculative.” Maj. Op. at 575, 109 A.3d at 105. The Majority notes that Local 1300 “has no control over Lovelace’s reputation, either within the union community or without. Nor could it control the results of a new election. Also, the record does not reveal any mechanism in the Local 1300 Constitution for informing all of the union’s membership about the results of a union trial.” Maj. Op. at 576, 109 A.3d at 105. Stated otherwise, Local 1300’s constitution did not provide a mechanism by which the union could adjudicate and provide complete relief to Lovelace, even absent Local 1300’s inability to provide the monetary damages that were sought.
Where, as here, a tort claim for defamation with actual malice seeking monetary damages is at issue, a trial court— not a union trial board—is best positioned to adjudicate the tort claim. Defamation is a common law tort, and “to present a prima facie case for defamation, a plaintiff must ordinarily establish that the defendant made a defamatory statement to a third party; that the statement was false; that the defendant was legally at fault in making the statement; and that the plaintiff thereby suffered harm.” Gohari v. Darvish, 363 Md. 42, 54, 767 A.2d 321, 327 (2001) (citations and paragraph break omitted). The first element involves “publication,” and the fourth element involves “special harm.” See Restatement (Second) of Torts, § 558 (1977). These elements are technical legal concepts that courts have applied and developed through the case law for decades. Moreover, as an officer of Local 1300, Lovelace was a public figure, and thus had to prove actual malice, yet another technical legal concept. See Chesapeake Publ’g Corp. v. Williams, 339 Md. 285, 297, 661 A.2d 1169, 1175 (1995) (“[F]or a person to be held liable for defaming a public figure, actual or constitutional malice must be shown. Proving actual malice requires clear and convincing evidence that a statement was made with knowledge that it was false or with reckless disregard of whether it was false or not.” (Citations and internal quotation marks omitted)). Trial courts routinely address these legal concepts in resolving *581 tort claims for defamation; a union’s trial board is unlikely to ever be called upon to resolve defamation claims, especially if they are unrelated to a labor dispute.
In sum, I would hold that, under the circumstances of this case, Lovelace was not required to exhaust Local 1300’s internal remedies—not only due to the unavailability of monetary damages, but also due to the lack of an internal union remedy sufficient to process and adjudicate such a claim.
For the above reasons, respectfully, I concur.
Judge McDONALD has authorized me to state that he joins in this opinion.

. I agree with the Majority that, where a union member claims that he has been defamed by the union and a fellow union member "and seeks monetary damages, if the union's internal remedies do not provide monetary damages, they are inadequate and the union member is not required to exhaust them.” Maj. Op. at 578, 109 A.3d at 106-07.